

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00230-CV

IN THE INTEREST OF F.M.-T. AND
E.M.

-----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is an ultra-accelerated appeal[2] in which Appellant Mother appeals the

termination of her parental rights to her children, F.M.-T. and E.M.   The sole

issue that Mother raises is whether the trial court had subject-matter jurisdiction

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal was filed).

to terminate her parental rights approximately one year after F.M.-T. and E.M. were removed under the temporary emergency jurisdiction statute. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

Mother is the parent of four children; her two oldest children live with her mother because Mother had "made a lot of bad decisions." The two younger children, who are involved in this appeal, are a son F.M.-T., who was born in August 2007, and a daughter E.M., who was born in November 2009.

Mother moved from Mulberry, Florida, to Waco, Texas, in the middle of September 2011. A month later, in the middle of October 2011, Mother moved from Waco to Fort Worth because her ex-husband[4] had threatened to kill her children in Waco. When Mother moved to Fort Worth, she had no home, knew no one, and allowed her children to live with strangers in a hotel room.

The Department of Family and Protective Services initially received a referral in October 2011, alleging neglectful supervision of the children by Mother and her boyfriend. The referral stated that F.M.-T. had a bruise on his face and was limping and that medical care had not been sought. The Department was unable to locate the family at that time.

---

[3]Because Mother does not challenge the sufficiency of the evidence, we set forth only a brief rendition of the facts.

[4]Mother later testified that she was still married and had only separated from her husband.

2

On or about December 20, 2011, Mother signed a power of attorney allowing her "ex-sister-in-law" Annette to care for F.M.-T. and E.M. because Mother was homeless and because her children had seen her raped by eight men while Mother was prostituting herself. The Department finally located the children on or about December 22, 2011, while they were in Annette's care.

On December 26, 2011, Annette requested that the Department take the children because she was not willing to continue caring for them; the Department removed the children and placed them in foster care. On December 27, 2011, the Department filed a "Petition For Protection Of Children, For Conservatorship, And For Termination In Suit Affecting The Parent-Child Relationship." The Department's petition states that no other court has continuing, exclusive jurisdiction over the child. The trial court held a hearing, found that it had jurisdiction pursuant to chapter 152 of the family code, and issued a temporary order appointing the Department as managing conservator of the children.

On December 17, 2012, fifteen months after the children had moved to Texas, the termination trial was held. The trial court took judicial notice of two letters from the Texas Department of State Health Services indicating that the children had not been the subject of any suit affecting the parent-child relationship in which a judgment was entered after January 1, 1974. The testimony at trial revealed that while the case had been pending, Mother had gone to jail for criminal trespass and possession of marijuana. Mother tested positive for methamphetamine and amphetamines on December 26, 2011; on

3

June 26, 2012; and on November 6, 2012, when she showed up for a visit with her children. Mother visited with her children only three times during the case and did not visit them during the five-month span from June 2012 until November 2012. Mother received a service plan on January 31, 2012, but she did not work her services.

After hearing the evidence at trial, the trial court found by clear and convincing evidence that Mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and that termination of the parent-child relationship between Mother and F.M.-T. and between Mother and E.M. was in the children's best interest. This appeal followed.

## III. TRIAL COURT HAD JURISDICTION TO TERMINATE MOTHER'S PARENTAL RIGHTS

In her sole issue, Mother argues that the trial court did not have subject-matter jurisdiction to terminate her parental rights. Mother contends that the trial court lacked jurisdiction to terminate her parental rights because Texas was not the home state of the children when the termination suit commenced—that is, when the Department filed the termination petition; the emergency circumstances justifying the trial court's exercise of temporary emergency jurisdiction ended when the Department took emergency temporary custody of the children by virtue of the December 27, 2011 order so that the temporary emergency jurisdiction expired; and the temporary emergency order should have become

4

final, and it only appointed the Department as the children's managing conservator but did not terminate Mother's parental rights.

Whether a trial court has subject-matter jurisdiction over a particular dispute is a question of law that is reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The obligation to establish the existence of such jurisdiction lies with the party invoking the trial court's authority, normally the plaintiff. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Texas Family Code section 152.204 authorizes a trial court's temporary emergency jurisdiction over a child custody determination in certain circumstances. Tex. Fam. Code Ann. § 152.204 (West 2008). A Texas court has temporary emergency jurisdiction to make a child custody determination if the child is present in Texas and the child has been abandoned or it is necessary in an emergency to protect the child because the child is subjected to or threatened with mistreatment or abuse. *Id.* § 152.204(a). Section 152.204(b) states that

> [i]f a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section becomes a final determination, *if it so provides* and this state becomes the home state of the child.

*Id.* § 152.204(b) (emphasis added). "Home state" is defined as the state in which a child lived with a parent or a person acting as a parent for at least six

5

consecutive months immediately before the commencement of a child custody proceeding. *Id.* § 152.102(7) (West 2008).

Texas Family Code section 152.201 sets forth the instances in which a Texas court possesses jurisdiction to make an initial child custody determination. Tex. Fam. Code Ann. § 152.201 (West 2008) (providing that "a court of this state has jurisdiction to make an initial child custody determination *only* if:" and listing four instances) (emphasis added). One of the instances in which a Texas trial court is vested with initial child custody jurisdiction is when "this state is the home state of the child on the date of the commencement of the proceeding." *Id.* § 152.201(a)(1).

Texas Family Code section 155.101 provides a method for identifying the court with continuing, exclusive jurisdiction over a child. Tex. Fam. Code Ann. § 155.101 (West 2008). Section 155.103(a) provides that "[a] court shall have jurisdiction over a suit if it has been, correctly or incorrectly, informed by the bureau of vital statistics that the child has not been the subject of a suit and the petition states that no other court has continuing, exclusive jurisdiction over the child." *Id.* § 155.103(a).

Turning to the application of these statutory provisions to the present facts, it is undisputed that—because the Department simultaneously filed its request for temporary emergency custody of the children and its termination petition about three months after Mother and the children arrived in Texas—Texas was not the children's home state when the termination proceeding "commenced," i.e., when

6

the termination petition was filed. That is, when the termination petition was filed, the children had not lived in Texas for six consecutive months. Thus, the instances triggering section 152.201's initial-child-custody-determination jurisdiction did not exist under the present facts. We agree with Mother that the trial court did not exercise termination jurisdiction under this section.

But Mother concedes that the trial court properly exercised temporary emergency jurisdiction pursuant to section 152.204(a). *See id.* § 152.204(a). While the trial court possessed temporary emergency jurisdiction, it ruled on only the portions of the Department's petition—the requests for protection and for conservatorship—that required emergency action. The trial court did not rule on the termination portion of the Department's petition while it possessed only temporary emergency jurisdiction; that portion of the petition remained pending.

By mid-March 2012, Texas had become the children's home state because they had lived in Texas for six months, *see id.* § 152.102(7), and by July 2012, the Texas Department of State Health Services had informed the trial court that the children had not been the subject of a suit affecting the parent-child relationship in which a judgment was entered after January 1, 1974. *See id.* § 155.103(a). And the Department's termination petition stated that no other court had continuing exclusive jurisdiction over the child. So, contrary to Mother's contention, the trial court did not exercise temporary emergency jurisdiction over the termination proceeding; instead, by the time the termination portion of the Department's petition proceeded to trial, Texas had become the

7

children's home state, and the trial court possessed jurisdiction to rule on the termination portion of the Department's petition pursuant to section 155.103(a). *See id.*; *In re J.C.B.*, 209 S.W.3d 821, 824 (Tex. App.—Amarillo 2006, no pet.) (holding under similar facts that a trial court that had initially exercised temporary emergency jurisdiction under section 152.204(a), subsequently possessed subject-matter jurisdiction to terminate parental rights).

Finally, concerning Mother's last argument, the temporary emergency order did not state that it would become a final order and was ultimately superseded by the termination order. *See* Tex. Fam. Code Ann. § 152.204(b) (indicating that temporary order may become final if it so provides).

Having addressed all of Mother's jurisdictional arguments, we overrule her sole issue.

## IV. CONCLUSION

Having overruled Mother's sole issue, we affirm the trial court's judgment terminating Mother's parental rights to F.M.-T. and E.M.

SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED:  October 3, 2013